IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff | |
| vs | CRIMINAL 05-0157CCC |
| **1) BRAULIO AGOSTO-VEGA** (Counts One, Two, Three and Four) 2) JUAN AGOSTO-VEGA (Counts One, Two, Three and Four) **3) BRAULIO AGOSTO MOTORS, INC**. (Counts Two and Three) | |
| Defendants | |

**O R D E R**

Before the Court is a Motion for Reconsideration of the Court's May 20, 2011 Sanctions Order (docket entry 430) filed by defendant Braulio Agosto-Vega (Agosto) on May 22, 2011 (**docket entry 431**). On May 23, 2011, the Court issued an Order (docket entry 432) staying enforcement of the economic sanctions imposed upon defendant Agosto and his attorney Francisco Rebollo-Casalduc until the Court fully considered and disposed of their Motion for Reconsideration. After careful consideration of all the arguments and information set forth in defendant's Motion for Reconsideration, the same is DENIED for the reasons which follow.

The timeframe of the ten motions in-limine which triggered the trial continuance is set forth at page 2 of the Sanctions Order:

> On May 3, 2011, the first four of ten motions in-limine were filed by Agosto (docket entries 415, 416, 417 and 418). These were followed by a fifth and sixth motion filed on May 17, 2011 (docket entries 422 and 423) and a seventh, eighth, ninth and tenth motion in limine (docket entries 424, 425, 426 and 427) all filed on May 18, 2011, the day before the scheduled May 19, 2011 trial date. The last of these motions was filed at 12:42 P.M. At 4:37 P.M. of that same date, the Court entered an Order (docket entry 429) vacating the May 19, 2011 trial.

The Court's concern with movant's conduct is conveyed at paragraph 1, p. 4 of the Sanctions Order which in its relevant part reads:

All of these in-limine motions would have resulted in excludable delays under §3161(h)(1)(D) of the Speedy Trial Act (18 U.S.C. §3161(e) et. seq.), had they been timely filed within the period following the Mandate.  Defendant Agosto chose, instead, to delay their filing and proceed to seek dismissal with prejudice for an alleged violation of the Speedy Trial Act.  Confronted with the denial of his speedy trial violation claim, Agosto filed the ten extensive in-limine motions, ranging from the day before the trial to four work days before such setting.  It is reasonable to infer that Agosto knew that by filing ten in-limine motions with memoranda of law, totalling 59 pages, so close to trial would require a continuance of the same.  All of the ten in-limine motions request exclusion at the new trial of evidence that was admitted under the rules of evidence at the first trial.

Docket Entry 415.

        The first in-limine filed on May 13, 2011 (docket entry 415) seeks to exclude the

testimony of Salvador Colom, partially or entirely, as part of its constructive amendment of

the indictment claim or, alternatively, that the government be required to elect between the

Colom testimony on a discharge in Phase 4 of the Mansiones de Hacienda Jiménez

Development and the Arty López' testimony on a discharge at another location so as to

render Count Three of the Indictment duplicitous.  Both of these persons were government

witnesses at the first trial.  In their Memorandum of Law in support of the constructive

amendment of the Indictment claim, movants[1] refer not only to arguments at the first trial on

a Fed.R.Crim.P. 29 motion[2] but also to the evidence presented to the grand jury which

purportedly did not include the Colom testimony brought at the first trial.[3]  It refers to specific

---

        [1]  Although defendants Agosto and Braulio Agosto Motors, Inc. (BAM) appeared as movants in each of the in-limine motions, only the attorney for Agosto, Mr. Rebollo-Casalduc, signed the same.  Corporate defendant BAM is represented by an independent counsel, Gary H. Montilla-Brogan, whose signature does not appear nor is there any statement by him on behalf of BAM joining or adopting any of the motions.  For that reason, the Order of May 20, 2011 sanctioned only the individual defendant and his counsel.

        [2]  "During the arguments at the first trial on defendants' motions for judgments of acquittal, the government for the first time revealed that, at the time the indictment was returned, it was relying on the testimony of Arty López regarding the discharge he testified to observing from the tank truck onto land adjacent to his, 300-400 meters from the river (see Tr. 6/24/08 at 128-32) and that it was *not* relying on the discharge to which Colom testified onto land in Phase 4 of the Mansiones development (see Tr. 7/7/08 at 125, 128-30; 7/8/08 at 21-23, a different location than that to which López testified.  Tr. 7/16/08 at 41-45."

        [3]  "Thus, when the grand jury passed on the question whether defendants should be indicted for a violation of the Clean Water Act through use of the tank truck in January, 2005, the evidence on which it predicated its decision to indict was the discharge to which López

portions of transcripts related to the Rule 29 arguments.  More significantly, movants cautioned that the testimony of Colom on the Phase 4 discharge "constituted an impermissible constructive amendment of the indictment . . . and will do so again if the government is permitted to proceed in the same fashion at the retrial of this case." P. 3. Movants also argue that the Colom testimony on discharges at Phase 4 of the Mansiones de Hacienda Jiménez Development given at the first trial should be excluded as irrelevant and unfairly prejudicial.  Both arguments are made based on the contents of the Colom testimony at the first trial as well as on a purported absence of evidence at the first trial "from which the jury could have concluded that waste discharged at the point Colom indicated in Phase 4 would have made its way into any body of water meeting the definition of 'waters of the United States.'"  Motion, at p. 8.  The Fed.R.Evid. 403 analysis is made by movants also utilizing what they know was Colom's testimony at the first trial.  To that end, they contend at page 11 that:

> The government simply does not need the Colom's testimony regarding the Phase 4 discharges, as the evidence does nothing to advance its contention that Agosto and Agosto Motors are criminally responsible for the discharges with which they are charged or that Agosto conspired to violate the Clean Water Act through various means which led to sewage entering Jiménez Creek.  Nothing in Colom's testimony adds to the government's quantum of proof....

On the unfair prejudice element of Rule 403, at page 12 movants argue that "[t]he evidence regarding the Phase 4 discharges can only seriously and unfairly prejudice the defendants by disgusting and angering the jury."

Docket Entry 416.

The second motion in-limine seeks limitation of testimonial evidence, photographs and other related proof of overflowing tanks at the Mansiones de Hacienda Jimenéz Development on the grounds that "the extent of such evidence offered at the first trial of this case and its highly prejudicial impact was such that the probative value of the evidence will be substantially outweighed by the clear danger of unfair prejudice to the defendants [and] jury confusion...."  P. 1 (emphasis ours).  The Memorandum of Law then gives examples of

---

testified.  It did not indict defendants for violating the Clean Water Ac t by causing the different discharge in a different location (on land which Colom testified was adjacent to a creek which was not Jiménez Creek) to which Colom testified."

testimonies regarding septic tanks overflows and raw sewage flow given at the first trial by witnesses William García and Iraida Colón, residents of the Mansiones de Hacienda Jiménez Development.  One of the arguments advanced in support of the limitation of evidence is that "the government acknowledged at the first trial of this case" that "septic tank overflows were not themselves the Clean Water Act violations charged." P. 2 (emphasis ours).  Movants then refer to transcript of the June 19, 2008 initial trial in which the Court "found the evidence admissible as part of the government's chain of circumstantial evidence."  P. 2.  They challenge that evidence under Rule 403 asserting that "[t]he extent of the evidence regarding the overflows presented by the government at the first trial was highly and unfairly prejudicial to defendants in relation to any probative value the evidence may have and will be again if its extent is not considerably curtailed."  P. 3 (emphasis ours).  Once more, the objection to the admissibility of evidence in this case hinges on the analysis of that same evidence when presented by the government at the first trial.

On the argument of jury confusion under Rule 403, movants claim that the evidence of septic tanks overflows "will divert [the jury] from the central issues before it"and that "[t]hose pivotal issues, which require the jury's focused and dispassionate consideration, will be largely the same as at the prior trial."  P. 4 (emphasis ours). Docket Entry 417.

This motion, the third of four filed on May 13, 2011, seeks to strike from the Indictment specific language "charging that Agosto and his brother Juan Agosto conspired . . . and agreed with each other . . . to build and use trenches on the sides of a number of houses at Mansiones de Hacienda Jiménez Housing Development for purposes of disposing of the raw sewage that would be channeled into the Jiménez Creek." P. 1.  This specific allegation is part of Count One of the Indictment, the conspiracy charge.  Movants also request that the Court strike overt act number 6 from Count One, page 6 of the Indictment, which reads:  "During the year 2004 [1] Braulio Agosto Vega and/or Juan Agosto Vega caused trenches to be excavated on the sides of a number of houses at Mansiones de Hacienda Jiménez Housing Development for purposes of channeling the raw sewage that overflowed from the septic tanks and into the Jiménez Creek."   This motion to strike portions of Count One relies entirely on the evidence presented at the first trial and,

specifically, on what movants refer to as uncontroverted evidence at the first trial regarding construction of the trenches, that is, the testimonies of government witnesses Jaime Géliga and Salvador Colom.   As a reason in support of the redaction of language from the Indictment, the Motion states at page 2: "The evidence at the <u>first trial</u> of this case conclusively established that the construction of such drains was a proper response to the problem of the overflowing septic tanks at Mansiones de Hacienda Jiménez, carried out for the purpose of attempting to solve the problem by legitimate means...."  (Emphasis ours.) The Motion refers to Géliga's testimony on direct examination at the first trial "that French drains were an 'acceptable technology' which did not function properly in this case." P. 3. Reference is made to transcripts of the Géliga testimony dated July 14 and 15, 2008 of the first trial.  Referring to government witness Colom, the Motion refers to specific portions of the transcript of his July 7, 2008 testimony at the first trial in the sense that "the construction of the drains was an effort by Agosto to solve the septic tank overflow problem . . . but the drains did not work because of lack of percolation."  P. 3.

Therefore, it is precisely "[b]ased on the evidence introduced by the government at the <u>first trial</u> of this case" that it is now claimed that "no reasonable fact finder could have found beyond a reasonable doubt that Agosto conspired to violate the Clear Water Act by constructing French drains for the purpose of channeling raw sewage into Jiménez Creek" (p. 4, emphasis ours) and that, therefore, such allegation should be stricken from the Indictment.

Likewise, as to the request to strike paragraph 6 of Count One as an overt act of the conspiracy, it is alleged at page 4 of the Motion that "[g]iven the uncontroverted evidence at trial that the drains were constructed for the purpose of alleviating the septic tank overflows . . . not for the purpose of channeling septic tank waste into Jiménez Creek, the construction of the drains cannot properly be alleged or considered by the jury as an overt act in furtherance of the conspiracy."  P. 4.

A related argument made in this Motion is that all evidence, whether testimonies, photographs or other, related to the construction of French drains or trenches[4] should be excluded under Rule 403 as unfairly prejudicial.  The Motion refers to the testimony of Salvador Colom "at the first trial of this case" citing excerpts of his July 7, 2088 transcript as well as government expert Géliga's transcript dated July 14, 2008 and photographs of the drains or trenches showing sewage flowing from them down the sidewalks and streets of the Development.   The argument reverts to what movant describes as "uncontroverted testimony that the drains were a legitimate effort to try to solve the problem of the septic tank overflows," and, therefore, "such testimony and photographs was unfairly prejudicial to defendants and will be again if permitted to recur at the retrial of this case, as such evidence will predictably disgust and anger the jury without adding anything to the government's quantum of proof regarding the offenses charged."  P. 6.  The Motion insists that "given the utter failure of the government's proof on this issue at the first trial, [defendants] should not again be subjected to a trial contaminated by such now-demonstrably irrelevant and unfairly prejudicial evidence."  P. 7 (emphasis ours).

Docket Entry 418.

The last of the in-limine motions filed on May 13, 2011 (docket entry 418) requests that the "Court exclude as evidence at the trial of this case any and all evidence relating to the wealth or financial resources of defendant Agosto or to the finances and net worth of Agosto Motors, including, but not limited to, those portions of the 2004-05 Agosto Motors corporate annual reports which the government introduced into evidence at the prior trial of this case."  P. 1 (emphasis ours).  It refers to specific portions of the trial transcripts of July 9, 2008 as well as trial Exhibits 26A and 26B, the corporate annual reports, which the Court allowed "[a]t the prior trial of this case, over Agosto's objection that the evidence was irrelevant and unfairly prejudicial...."  P. 1 (emphasis ours).  It is also informed that appellants "Agosto and Agosto Motors challenged the introduction of this evidence on

---

[4]  Whether or not the term "French drain" was used throughout the first trial to refer to trenches as movant claims at page 3 of docket entry 417 has no significance for purposes of our determination here.

appeal."  P. 2.  The brief of appellants filed on August 3, 2009 discusses the evidentiary issue at page 66.  In support of the Rule 403 objection, at page 3 of the Motion it s argued that "the introduction of such evidence, particularly in light of the use to which the government put it in the prior trial, would be seriously and unfairly prejudicial to defendants...."  (Emphasis ours.)  Referring again to the use of this evidence at the first trial, at page 3 of the Motion it is contended that "[t]he true--and manifestly inflammatory--purpose for which the government introduced the wealth evidence emerged in the government's closing argument, in which it is argued to the jury that Agosto was motivated by greed and avarice and chose to victimize the Mansiones homeowners and the public rather that spend money which both he and Agosto Motors had to pay for lawful disposal means."  P. 3. Excerpts of the government's closing arguments at the first trial are extensively quoted with references to the trial transcript of July 23, 2008.  It is argued that "the admission of this evidence provided the foundation for the government's improper arguments" (p. 4) and that "[t]his Court should act to prevent such unfair prejudice at the retrial of this case and exclude all . . . evidence relating to the wealth or financial resources of Agosto and Agosto Motors." P. 5.


Docket Entries 422 and 423.

        The first of two motions filed on May 17, 2011 requests exclusion of "all evidence relating to the results of the sampling of the water of the Espíritu Santo River at the treatment plant downstream from the point at which Jiménez Creek joins the Espíritu Santo River."  P. 1.  This motion makes reference to the testimonies of Puerto Rico Environmental Quality Board technician Brenda Rodríguez and of government expert Jaime Géliga during the first trial with specific reference to excerpts of the transcripts of the July 9, 10, 14 and 23, 2008 trial sessions.  Defendants state that they "assume that the government will again seek to introduce evidence of the 285-count coliform level at the water treatment plant at the retrial of this case."  P. 2.  Citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Fed.R.Evid. 702, they claim that the Court has a duty to ensure that an expert's testimony is both relevant and reliable.  Specifically, they contend that the sampling testimony during the first trial did not include samples of the water in the Espíritu Santo River

upstream from where Jiménez Creek joined it and, absent evidence of the coliform count at that point, the 285-coliform level "was an entirely meaningless datum" with no rational basis to conclude "that the elevated coliform level at the treatment plant was a result of discharges of sewage into Jiménez Creek." P. 2. This <u>Daubert</u> challenge to the 285-count sampling evidence presented at the first trial as irrelevant and unreliable is followed by a closely related Motion to Exclude Testimony Regarding Sampling Methodology and Results Absent Testimony of Persons who Conducted the Tests and Prepared the Report of the Results (docket entry 423).[5] This motion is primarily a <u>Daubert</u> challenge to testimony such as that of government expert Brenda Rodríguez and/or José Géliga given at the first trial. A reference is made to portions of the trial transcripts of Brenda Rodríguez dated July 9 and 10, 2008. Movants concede at the last page, last paragraph of this Motion (p. 4) that the report of the results of the analysis was not admitted by the Court at the first trial of this case.

Docket Entry 424.

This Motion seeks to exclude the testimonies of government witnesses Arty López and Ivette Rodríguez at the first trial regarding a conversation with co-defendant Juan Agosto as irrelevant. A reference is made to portions of the trial transcripts of June 24 and 25, 2008. The basis for exclusion is that "absent evidence, which was lacking at the <u>first trial</u>, that had Juan discharged septic waste at the location where the truck was stopped, that discharge would have entered waters of the United States . . . testimony regarding this conversation" is not relevant. P. 2 (emphasis ours). It is further argued that "[e]ven if the conversation could be found to have some marginal relevance, . . . it should nonetheless be excluded under Fed.R.Evid. 403." P. 2. In furtherance of their Rule 403 argument, movants state at p. 3 of the Motion that "the government simply does not need evidence of this conversation to establish . . . that Juan reported to Agosto and was the designated person for dealing with the Mansiones residents' septic tanks problems." P. 3.

---

[5]  Page 2 of this Motion is blank.

Docket entry 425.

Movants seeks to exclude "the testimony of Arty López regarding an alleged discharge onto land neighboring his property in January-February, 2005, at some distance from the river, absent evidence, which was completely lacking at the first trial of this case, that waste discharged on land at the location identified by López would flow into 'waters of the United States.'" P. 1 (emphasis ours). Movants narrate the López testimony at the first trial with specific reference to the trial transcripts of June 24 and 25, 2008. Movant Agosto goes as far as referring to his objection to the López testimony at the first trial on this particular discharge. We quote the relevant portions at pages 3 and 4 of the Motion:

> At the first trial, the government failed to present evidence from which a rational jury could have concluded that septic waste discharged at onto land at the distance from the river which López described would have entered a water of the United States. The only testimony even related to the point was López' testimony that the nearest body of water to the discharge site was a drain water system to the south which flowed to Grande Creek. Tr. 6/25/08 at 21. Defendant Agosto objected to this testimony on the ground that López lacked personal knowledge; the Court overruled the objection, but the testimony should have been excluded on this basis.

Motion, at p. 3 (emphasis ours).

> There is no basis in the record for a conclusion that López had personal knowledge that the drain water system flowed into Grande Creek or that his testimony was based on his own first-hand observation. More critically, even if López could be shown to have such personal knowledge, the government still produced no evidence that a discharge at the location to which López testified would have entered a water of the United States.

Motion, at p. 4.


Docket Entry 426.

This Motion seeks to exclude testimony of Ivette Rodríguez given at the first trial of this case with reference to her testimony "that Agosto had generally placed Juan in charge of the project and directed residents to contact Juan if they had problems." P. 2. Based on her trial testimony of June 25, 2008 at pages 111-112, 128 of the trial transcript, the evidentiary issue raised is that the Rodríguez testimony at the first trial "was wholly without personal knowledge regarding who . . . had given Juan the specific orders he claimed to be following . . ." in violation of Fed.R.Evid. 602. This first trial testimony of Rodríguez is also attacked as failing to comply with Fed.R.Evid. 701 regarding lay opinions in that "it was not 'helpful' to the jury as that term is used in Rule 701" since "[t]he jury had before it substantial

evidence regarding the roles played by both Agosto and his brother Juan in the Mansiones development and was fully capable of drawing his own inferences regarding where any such orders may have originated."  P. 2.

Docket Entry 427.

       The last of the ten in-limine motions, filed on May 18, 2011, seeks to exclude testimony given by government witness Jesús Torres, with reference to the trial transcript of June 26, 2008 at pages 108-109 and 123.  Movants argue that "[a]t the first trial of this case,  Torres was permitted to testify that . . . he overheard a conversation between Agosto and an individual who Torres identified, without foundation, as an engineer, which took place on land adjacent to his property, during which conversation . . . the engineer said that things had to be done as planned, to which Agosto responded that he was not interested in the plans, that he was the one who was paying, and that he was the one 'who had things done.'" P. 1 (emphasis ours).  This particular testimony is objected as "irrelevant to any issue in the case" and, if  "the Court concludes that the evidence has any minimal relevance . . . as the government argued to the jury, to show that Agosto gave orders to Mansiones employees, see Tr. 7/23/08 at 46, the evidence should nonetheless be excluded under Rule 403."  P. 2.  Expanding on their Rule 403 basis, movants state at page 3 of the Motion that "the government simply does not need this evidence.  At the first trial of this case, there was copious evidence, which remains available to the government at the retrial of this case, that Agosto was the developer of Mansiones, that he was well aware of the septic tank problems, the he spoke with residents on a number of occasions, pledging a solution to the problem, that he was a frequent visitor to the site, and that he gave instructions to Colom regarding the construction of trenches to divert rain water and of the French drains in an effort to solve the septic tank problem" and that it "does not need this highly and unfairly prejudicial testimony that Agosto may have . . . told a purported engineer in an unknown context at an unknown time that some unknown component of the development should proceed in the manner he directed."  P. 3 (emphasis ours).

       This last motion, as most others, identifies not only the subject matter defendants seek to exclude at the 2011 retrial by making specific references to the 2008 first trial, but

CRIMINAL 05-0157CCC                          11

the evidentiary grounds for exclusion as well.  Other examples are the following in-limines:

(1) Docket Entry 415: the "impermissible amendment of the indictment" claim allegedly consists of "[t]he government's presentation of Colom's testimony and its reliance on the Phase 4 discharge to which he testified as a basis for the conviction of defendants on Count Three" which the government "will do so again if . . . permitted to proceed in the same fashion at the retrial of this case."  P. 3.

(2) Docket Entry 417: "Based on the evidence introduced by the government at the <u>first trial</u> of this case, no reasonable fact finder could have found beyond a reasonable doubt that Agosto conspired to violate the Clean Water Act by constructing French drains for the purpose of channeling raw sewage into Jiménez Creek...."   P. 4 (emphasis ours). Therefore, "[t]he allegation that Agosto conspired to violate the Clean Water Act by causing the construction of trenches for the purpose of channeling raw sewage into Jiménez Creek should . . . be stricken from the indictment."  P. 4.  On the Fed.R.Evid. 403 argument, at page 6 of this Motion movants claim that "[g]iven the uncontroverted testimony that the drains were a legitimate effort to try to solve the problem of the septic tank overflows, such testimony and photographs was (sic) unfairly prejudicial to defendants and will be again if permitted to recur at the retrial of this case...."

(3) Docket Entry 418: Regarding the request to exclude evidence of wealth, movants refer to this as  an "appeal[ ] to class prejudice" and urge the Court to "act to prevent such unfair prejudice at the retrial of this case...." P. 5.

(4) Docket Entry 422: Referring to evidence of the 285-count coliform levels, admitted at the first trial,  movants contend that "[e]ven without any expert insinuation that defendants were responsible for the elevated coliform levels at the water treatment plant, the jury is all too likely to speculate . . . that defendants were responsible for the high coliform levels in the river...."  P. 4.

(5) Docket Entry 424: the request to exclude testimony of witness López' conversation with Juan Agosto provided at the first trial is two-pronged: (a) that it does not advance the theory that Braulio Agosto is criminally responsible for discharges of septic waste into the Jiménez Creek because even if, arguendo, Juan was following his brother's orders, it referred to the disposal of waste on land owned by Agosto and (2) that a "number of witnesses . . . testified

at the first trial and will presumably so testify again at the retrial of this case" that Juan
Agosto "was the designated person for dealing with the Mansiones residents' septic tank
problems."  P. 3 (emphasis ours).

(6) Docket Entry 425: Seeking exclusion of the Arty López' testimony of a discharge onto
land in January or February 2005 presented at the first trial, movants refer to the absence
of "proof of the requisite nexus between the discharge and a water of the United States" and
argued that "[i]f such a failure of proof occurs again at the retrial of this case, defendants
will, of course, be entitled to a judgment of acquittal, but that will not cure the unfair
prejudice caused to them by the admission of López' testimony regarding this discharge."
P. 4.

(7) Docket Entry 426: the Rodríguez' testimony at the first trial regarding "the possible
sources of the orders to which Juan referred" are described as "her suppositions" (p. 3.) and
as "simply guessing."  P. 2.

        Given that these ten in-limine motions filed in May 2011 have as a common
denominator either  the exclusion of evidence presented at the first trial held in 2008 or
deletion of language from the 2005 Indictment/its impermissible constructive amendment
by evidence admitted at such trial, one must ask: why these motions were not filed within
a reasonable time after the October 21,  2010 Mandate?

        Defendant Agosto and his attorney Rebollo-Casalduc contend that by raising these
evidentiary issues prior to trial they have afforded "the opposing party and the Court the
luxury of time to consider, oppose and correctly rule on the issues" instead of having "simply
objected orally at trial . . . or filed motions during trial raising the same objection."  Motion
for Reconsideration, at p. 5 (emphasis in original).  Had they so chosen, "the government
would have had to oppose the objection on the fly, and the Court would have had to rule on
them on the spot."  Id.  The fact that ordinary in-limine motions are routinely made and ruled
upon during trial does not mean that in the circumstances of this case, where defendants
moved in limine for the Court to exclude testimonial and documentary evidence presented
at a first trial held three years ago, making use of transcripts of the first trial and extensive
legal research, they can unjustifiedly delay the start of the second trial by their filing hours
before.  Movants cite footnote 2 of Luce v. United States, 105 S.Ct. 460, 462 (1984), which

refers to the Court's use of the term in limine "in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered."  The "during trial" in limine made in that case was to preclude impeachment evidence consisting of a prior conviction.  The motion was denied since defendant had made no commitment that, if granted, he would testify, nor was the nature of his testimony known.  Therefore, he was required to testify.  This serves to demonstrate that the appropriateness of the timing of an in-limine varies.  As footnote 4 of Luce, at page 463, suggests, the in-limine practice is not divorced from case management.  There, the Court observed that "although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  (Emphasis ours.)  Considered in this light, we conclude that the ten in-limines to exclude at retrial substantive evidence admitted at the first trial could and should have been filed within the three-month period following the October 21, 2010 Mandate.

        Defendant Agosto and attorneyRebollo-Casalduc state point-blank at page 7 of the Motion for Reconsideration that: "Back in January and February 2011, we were discussing settlement with the Deputy Chief of White Collar Crimes of the Criminal Division Ernesto López-Soltero, and it was fully expected that a settlement would be reached."  They clarify that "[t]he settlement discussions, of course, did not take place every day, but they were serious, meaningful and close to reaching a resolution," so, therefore, "back in February 2011, there was not even a thought of the possibility that this case would end up again in a trial, and thus no occasion to even consider the filing of in-limine motions."  Motion for Reconsideration, at pp. 7-8 (emphasis in original).  This justification loses legitimacy when one reads the Motion to Dismiss Indictment for Violation of the Speedy Trial Act filed by defendant Agosto and signed by Mr. Rebollo-Casalduc on March 23, and 22, 2011, respectively (docket entry 405).  While they assert in the Motion for Reconsideration, at page 7, that "[b]ack in January and February 2011" defendant Agosto and Assistant U.S. Attorney López-Soltero were discussing settlement, that these discussions were "serious," "meaningful," and that the parties "fully expected that a settlement would be reached," the speedy trial calculations listed at page 2 of the dismissal motion (docket entry 405) covered

the period from October 22, 2010 through January 31, 2011 and the only excludable days reported from November 28, 2010 to January 24, 2011 were for the filing of docket entries 384 through 386, as acknowledged in footnote 1, p.2 of that Motion, none of which had anything to do with plea discussions.  Nowhere in the dismissal motion do movants even mention a single day of the plea negotiations held "back in January and February 2011," as excludable, just as they did not exclude the time granted by the Court in its Scheduling Order of October 27, 2010 to conduct plea negotiations from such date until November 30, 2010.  Both the January/February 2011 negotiations now claimed, and the thirty-four-day period for plea negotiations granted in the October 27, 2010 Order were excludable delays under 18 U.S.C. §3161(h)(1), see United States v. Montgomery, 395 Fed. Appx., 177, 182 (6th Cir. 2010), which movants chose to disregard at their convenience when making the speedy trial calculations in their March 23, 2011 Motion.  Regarding the January/February 2011 negotiations, by improperly omitting their mention Agosto obliterated the negotiations altogether.  He came to Court with a speedy trial violation motion knowing that his calculations kept out information that he had to report.  Now, in an effort to justify the very late in-limine motions, he resurrects the plea negotiations as an excuse for not filing them before.  They now serve his purpose.

Just as significant is the discussion in the Motion to Dismiss based on a speedy trial violation which, at pages 2 through 9, focuses on an alleged improperly granted continuance of the February 8, 2011 trial setting.  The whole thrust of that discussion is that both defendants were ready to try the case on February 8, 2011, even though the corporate defendant, as of February 2, 2011, had not appeared through new counsel after Fitzwilliams' withdrawal.  They acclaim the appearance of Gary Montilla, Esq. on February 14, 2011, six days after the scheduled trial, as evidence of  "his readiness to try the case at any time."  Motion, at p. 5.  Agosto and Braulio Agosto Motors, Inc. were both emphasizing their trial readiness and the unjustified continuance of the February 2011 trial as circumstances which warranted dismissal with prejudice of this case for violation of their speedy trial rights.

The tenor of the May 22, 2011 Motion for Reconsideration of sanctions is quite different.  Just two months after the filing of the speedy trial motion, and, as justification for

not submitting ten (10) in-limine motions until May 13-May 17/18, 2011, Agosto and his counsel for the first time bring up that "**[b]ack in February, 2011 . . . the defense** fully expected that the case would be settled, and the possibility of a trial was unfathomable" (Motion, at p. 7) and, consequently, that there was ". . . no occasion to even consider the filing of <u>in limine</u> motions." <u>Id.</u>, at p. 8 (emphasis in original).  Movants cannot have it both ways.   For the January/February 2011 negotiations to have legitimacy, not as an afterthought, but as a reason for not even considering the filing of in-limine motions back then, Agosto and his attorney, at a minimum, should have acknowledged the existence of the negotiations in the speedy trial motion.  After all, in their own words, these were "serious and meaningful" negotiations.  They did not.  The non-excludable days were calculated without taking these negotiations at all into account.  Additionally, it is difficult to believe defendant and counsel when they state on **May 22, 2011** that back in February 2011 "the possibility of a trial was unfathomable," having previously opposed the continuance of trial and having categorically asserted in their March 23, 2011 speedy trial motion that they were ready for trial in February 2011.

Another unexplained lapse is the failure to file in-limine motions from the period following the Mandate from October 22, 2010 to December 31, 2010.

We now come to the date of the filing of the in-limines.  Starting on May 13, 2011 in which four such motions were filed, the remaining ones were submitted on May 17 and May 18, 2011.  Movants refer to the last status conference held on March 29, 2011 in which Minutes of Proceedings (docket entry 409) briefly indicate that the parties were engaged at the time in plea negotiations.  They state that "the filing of pre-trial or <u>in limine</u> motions would have been counter-productive" and would have "undermined and/or sabotaged the process." P. 3 (emphasis in original).  They refer to the government's Informative Motion filed on May 13, 2011 at 3:19 P.M. (docket entry 412) in which it was reported that "all plea negotiations [had] ended and the United States [was] ready to begin trial as scheduled."  According to the defense, the United States also sent to it that same day at 1:06 P.M. an e-mail which was received at an unspecified time "later."  <u>See</u> Motion, at p. 3.  At page 3 of the request for reconsideration it is represented that "the defense acted quickly and without delay in <u>working on</u> and filing its motions."  (Emphasis ours.)  That would mean that the first four in-

limines, docket entries 415 through 418, were prepared and filed within a matter of hours, all on May 13, 2011.  Agosto and counsel have described all of the motions as "substantive, well-researched, fully argued, and adequately based on the evidence...."  Motion, at p. 6. A brief review of the May 13, 2011 motions reflects the following:

First in limine - docket entry 415 - filed at 5:40 P.M.

- 12 pages, 9 of these are a legal memorandum.
- 7 references to testimonial excerpts with date and page number of the trial transcripts.
- 25 cases cited with direct quotes.

Second in limine - docket entry 416 - filed at 5:46 P.M.

- 5 pages of memorandum of law.
- 4 references to testimonial excerpts with date and page number of the trial transcripts, including trial transcript reference to an evidentiary ruling.
- 12 cases cited with direct quotes.

Third in limine - docket entry 417 - filed at 5:55 P.M.

- 2 pages quoting specific language of the Indictment and additional references to allegations of Count One.
- 7 references to testimonial excerpts of two witnesses with date and page number of the trial transcripts.
- references to three government exhibits.
- 5 pages of memorandum of law.
- at least 10 cases cited with direct quotes.

Fourth in limine - docket entry 418 - filed at 5:59 P.M.

- 5 pages of memorandum of law; 6 cases cited.
- 4 references to trial transcripts by date and page, with quotes from the government's closing argument and two government exhibits.

The two Daubert motions, as well as the remaining four in limines, filed on May 17 and 18, 2011, respectively, follow this same pattern.  Given the extent of the analysis, amount of detail, case law, quotes, and references to specific trial transcripts by date and page in each of the four motions, the Court rejects the representation made that "[o]nly a couple of hours after . . . the government filed an informative motion advising . . . that the negotiations had concluded . . . specifically at 5:40 p.m., the defense filed the first of its in limine motions."  Motion, at pp. 3-4 (emphasis in original).  A fair minded person who reads these four motions and the six that followed would conclude that, by the time the

government informed of the end of negotiations on May 13, 2011, the defense had already worked on them and had fully researched them.  It serves no purpose to try to determine exactly when.  What is important is that, instead of providing the Court "the luxury of time to consider and correctly rule," what they triggered was an inevitable delay and postponement of the trial scheduled for May 19, 2011.  There was no way that the number of evidentiary issues, with case law and trial transcript references to evidence submitted at the 2008 trial, could be opposed by the government and ruled upon by the Court in a span of time that would not result in a waste of judicial resources and jury time.  Again, a fair minded person would conclude that only if the evidentiary issues raised in  the in limines were stripped to their bare bones could the government oppose "on the fly" and the Court rule "on the spot," if raised during the trial.  To be sure, defense counsel could have chosen to reserve the objections until trial.  But those objections certainly would not have been, as described by counsel, the "substantive, well-researched, fully argued" ten in limine motions that the Court has before it.  Agosto and his counsel certainly had the time to ponder, research, analyze and review the evidentiary issues well before filing these detailed motions supported by memoranda of law.  When they chose to file them on the eve of trial, they left no alternative other than its continuance to allow both their opponent to respond and the Court to rule, without doing it on jury time.

        The circumstances outlined above were the only reason for a postponement that was not otherwise contemplated since the one-day continuance requested by Mr. Gary Montilla, defense counsel for Braulio Agosto Motors, Inc., played no part.  The claims now made by Agosto and attorney Rebollo-Casalduc that "a continuance for any measure of time" would have been justified based on Mr. Montilla's medical treatment is a matter that Mr. Montilla himself never made the Court privy to.  Had he provided any such information, the Court would have proceeded in the same manner as it did when Assistant U.S. Attorney López-Soltero was stricken with an extremely serious medical condition requiring substitution of counsel.  Notwithstanding the extraneous matter injected by defendant Agosto and attorney Rebollo-Casalduc, should Mr. Montilla choose to bring to our attention any personal situation regarding his health which has a bearing on his availability for trial, the Court will consider it and rule accordingly.

CRIMINAL 05-0157CCC                    18

    For the reasons stated above, the Motion for Reconsideration (**docket entry 431**)
is DENIED.   Pursuant to its inherent authority to manage and supervise the course of
proceedings before it, the Court finds that the circumstances outlined in this Order point to
an abuse of process by movants, Agosto and attorney Rebollo-Casalduc, which compels
the Court to jointly impose upon them an economic sanction in the amount of $2,000.00,
payable to the Clerk of Court no later than JUNE 10, 2011.[6]

    SO ORDERED.

    At San Juan, Puerto Rico, on June 6, 2011.


                                        S/CARMEN CONSUELO CEREZO
                                        United States District Judge

---

[6] The Due Process violation raised by movants was cured upon the Court's stay of
the enforcement of the economic sanction pending full consideration and disposition of the
matters raised in the Motion for Reconsideration of the May 22, 2011 Order.  See May 23,
2011 Order (docket entry 432).